RAWLS, Chief Judge.
Plaintiff Clyde Hart has appealed from an adverse summary final decree in an action for specific performance of certain *61 agreements to sell real property, for an accounting and other relief.
The primary question presented on this appeal is whether the trial judge erred in finding that there was no genuine issue of any material fact and in granting a summary final decree on the basis of the complaint, answer, exhibits and the deposition of Louis Ossinsky, Sr. We find that the deposition is contradictory and susceptible of two different constructions, one of which supports the appellant’s case.
On August 15, 1947, by written agreement the Goldmans as officers of Florida Farms Service agreed to convey certain lands of approximately 1365 acres to Hart for $6 per acre payable over a period of approximately 7 years. Paragraph 10 of this agreement provided that Hart would have the privilege of purchasing during the life of this agreement “any other lands acquired” by Florida Farms within the sections mentioned in the descriptions appearing therein. The sections mentioned were 25, 26, 35 and 36 of Township 17 S, Range 32 E.
On December 5, 1947, and on June 2, 1949, Florida Farms acquired by purchase from the county and drainage district the 411 acres in dispute in sections 26 and 35 of Township 17 S, Range 32 E.
The parties had a disagreement, and on July 7, 1952, Hart sued for specific performance of the agreement mentioned above and another similar agreement executed by the same parties. In settlement of that suit the Goldmans as officers for Florida Farms executed on September 1, 1954, two deeds to Hart, one conveying 3,873 acres, and the other conveying the 411 acres here in dispute — which were lands that Hart had the privilege of purchasing under the terms of the 1947 agreement. Also as a part of the settlement of said suit the parties on September 2, 1954, (one day after the execution of the two deeds) met in the office of the Goldmans’ attorney, Louis Ossinsky, Sr., and- executed another agreement. The first three paragraphs of this latter agreement referred specifically to the 3,873 acre deed and provided that certain adjustments would be made if within a limited time it was shown that Florida Farms did not have good title, that a valid tax certificate issued prior to 1945 was outstanding on the lands, or that taxes subsequent to 1945 were unpaid. By the terms of the fourth ■ paragraph Florida Farms agreed that “if it has any lands within the blocks and/or tracts described in the deed * * * to Clyde E. Hart dated the 1st day of September, 1954, which are not described in said Deed of conveyance * * * ”, it would convey same to Hart upon presentation of a search from a reliable abstract company within 45 days upon the same terms as it conveyed the other lands.
At the time of executing this last agreement Hart paid Ossinsky the balance due on the 3,873 acre deed and received the deed and a copy of the closing statement for that transaction. On that same day or within the next two days Hart delivered to Ossinsky a cashier’s check in the amount of $2,500 (the amount necessary to pay for the 411 acres). This check was dated September 2, 1954, made payable to Hart and was endorsed to the Clerk of the Circuit Court. Hart informed Ossinsky that he was satisfied with the deed and wanted to complete the transaction. Ossinsky deposed that in holding the 411 acre deed he was an escrow agent and his instructions from the parties was that he was to- hold the deed until Hart brought in the check. Nevertheless Ossinsky refused to give Hart the deed because he had received an instruction in the nature of a demand from his client, Mrs. Goldman, not to deliver the deed because she did not think that the 411 acres were included under the 1947 agreement. Both the deed and the check are still in Ossinsky’s possession.
About 1962 the Goldmans approached Ossinsky to have the suit, then still pending, dismissed for failure to prosecute. He refused on the grounds that the settlement between the parties was never consum *62 mated, and filed a response to the Goldmans’ motion for abatement stating that the 411 acre deed which he held was part of the settlement, and that notwithstanding the agreement of settlement and provisional performance by both parties, he had no choice but to hold the deed and check in continuous escrow awaiting further instructions “and full compliance by his client.” The suit was dismissed anyway.
On November 2, 1964, Hart brought the instant action for an accounting and for specific performance of the above mentioned agreements seeking an order directing Florida Farms to convey to him the 411 acres.
The trial judge entered summary final decree for Florida Farms on its motion.
We find that the documents before the chancellor and that portion of Ossinsky’s deposition as related above presents prima facie proof that the compromise agreement made in settlement of the first suit involved three things : 1. The conveyance of the 3,873 acres upon payment therefor, 2. The conveyance of the 411 acres upon payment therefor, and 3. The making of certain adjustments upon the terms specified in the September 2, 1954, agreement. This conclusion can be drawn from the documents themselves and from the uncontra-dicted portion of the deposition — namely, that the settlement of the first suit was never completed solely due to the fact that Ossinsky while acting in the duel capacity of escrow agent and attorney for the Goldmans received an order from his client not to do so.
Although paragraph 4 of the 1954 settlement agreement is ambiguous as to which of the two deeds it had reference to, the substance of the provision is such that the reference made therein to the “Deed from FLORIDA FARM SERVICE, INC., to CLYDE E. HART, dated the 1st day of September, 1954” could relate to either of the two deeds executed on that date, because both deeds in several instances conveyed only a part of a tract or block. Since much of these lands were Murphy Act land, divided into blocks and tracts, and acquired by Florida Farms by purchase of tax certificates from the drainage district and from the county, both deeds recited that the conveyance was subject to all drainage, state, and county taxes. The larger deed was subject to some adjustments for outstanding taxes and tax certificates under the first three paragraphs of the 1954 agreement, but the smaller deed was not. When Ossinsky testified that the 1954 agreement related to both deeds, he obviously had reference to paragraph 4. In this respect it is noted that although the 411 acres were lands falling within the 1947 agreement to sell additional lands not described therein but located within the sections named, they were not lands falling within the 1954 agreement as additional lands which Hart could purchase under paragraph 4 because they were not parts of tracts and/or blocks described therein. Therefore, the very terms of the documents lend efficacy to our conclusion that the evidence before the chancellor supports two different views of the facts.
A brief review of the facts supporting the chancellor’s decree is sufficient for purposes of this appeal. The second time Ossinsky was asked what his escrow instructions were he stated that the 411 acre deed was delivered to him in connection with paragraph 4 of the compromise agreement and was to be delivered to Hart after proper verification as to taxes; that the verification was to be made by an abstract company; and that he was to deliver the deed, if everything was in accordance with the agreement. On cross examination he stated that he didn’t know whether the search requirement as specified in paragraph 4 was ever complied with, but he had previously testified that he was not required to determine that. Although he admitted that his memory was vague as to what happened 12 years ago, the major part of the cross examination left a positive impression that the 411 acre deed was delivered to Ossinsky in connection with *63 paragraph 4 of the September 2, 1954 agreement. Accordingly, the chancellor concluded the 411 acre deed was one contemplated under paragraph 4 as additional lands not described in the larger deed. He found that the smaller deed was not consistent with the terms of the September 2, 1954 agreement since it did not describe any lands owned by Florida Farms within the “blocks and/or tracts” described in the larger deed and since no copy of a search was presented. He then held that the deed was erroneously issued and dismissed the complaint.
We conclude that the evidence before the chancellor was susceptible of two interpretations, one supporting the appellant’s case; that the movant on motion for summary decree failed to show the non-existence of a genuine issue; and so the chancellor erred in entering the summary final decree.
The question of laches was not decided by the chancellor and is not a question presented to this court on this appeal.
The decree is reversed and the cause remanded for further proceeding.
JOHNSON and CARROLL, DONALD K., JJ., concur.